Filing # 154798785 E-Filed 08/05/2022 04:14:33 PM

IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
SMALL CLAIMS DIVISION

Daniel Garcia,

      *Plaintiff,*

v.

Acima Digital, LLC,

      *Defendant.*

Case No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Daniel Garcia** ("**Mr. Garcia**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendant, **Acima Digital, LLC** ("**Acima**"), formerly known as **Acima Credit, LLC,** stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action for damages not exceeding $8,000, brought by Mr. Garcia against Acima for violations of Florida's *Civil Remedies for Criminal Practices Act*, Florida Statutes §772.101, *et seq.* ("**CRCPA**"), the *Florida Consumer Collection Practices Act,* Florida Statutes §559.55, *et seq.* ("**FCCPA**"), the *Electronic Funds Transfer Act,* 15 U.S.C. § 1693, *et seq.* ("**EFTA**"), the *Truth In Lending Act*, 15 U.S.C. § 1601, *et seq.* ("**TILA**"), and for unjust enrichment.

## JURISDICTION AND VENUE

2.     Jurisdiction arises under the CRCPA, Florida Statutes § 772.104, the FCCPA, Florida Statutes § 559.77(1), the EFTA, 15 U.S.C. § 1693, TILA, 15 U.S.C. § 1640(a), and Florida Statutes § 34.01.

3.     Acima is subject to the provisions of the CRCPA, FCCPA, EFTA and TILA, and is subject to the jurisdiction of this Court pursuant to Florida Statutes § 48.193.

4.      Venue is proper in Hillsborough County, Florida, pursuant to Florida Statutes §47.051, because the acts complained of were committed and / or caused by the Defendant therein.

## PARTIES

### Mr. Garcia

5.      **Mr. Garcia** is a natural person residing in Hillsborough County, Florida.

6.      Mr. Garcia is a *Consumer* as defined by the FCCPA, Florida Statutes § 559.55(8).

### Acima

7.      **Acima** is a Utah limited liability company with a primary address of **5501 Headquarters Dr., Plano, TX 75024**.

8.      Acima is registered to conduct business in Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324**.

9.      Acima is a *Debt Collector* within the meaning of the FCCPA, Florida Statutes §559.55(7), in that it uses instrumentalities of commerce, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and / or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10.      At all times relevant, Acima regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Acima a creditor within the meaning of TILA, 15 U.S.C. §1602(g).

## FACTUAL ALLEGATIONS

### Acima Makes Usurious, Unlawful Loan to Mr. Garcia

11.     On or about October 15, 2021, Mr. Garcia needed to purchase a new cell phone for his personal use.

12.     A retailer, TeleFix, referred Mr. Garcia to Acima for financing options.

13.     TeleFix provided the application, obtained the credit approval from Acima, and facilitated the completion of the transaction (the "**Loan**").

14.     Acima approved the Loan application and Mr. Garcia purchased a cell phone.

15.     In the loan documents provided to Mr. Garcia, Acima utilized the term "rental purchase agreement" rather than "loan" primarily for one reason: to attempt to evade Florida state usury laws, which restrict the annual interest rate to a maximum of 30% annually on loans of the nature taken out by Mr. Garcia.[1]

16.     Despite Acima's attempt to paint it otherwise, the agreement was nonetheless "credit" as defined by Regulation Z, 12 C.F.R. § 1026.2(a)(14), which defines "credit" as "the right to defer payment of debt or to incur debt and defer its payment."

17.     For purposes of usury calculations, courts will look beyond the form of a transaction to its substance. *Rollins v. Odom*, 519 So. 2d 652, 657 (Fla. Dist. Ct. App. 1988).

18.     The substance of the Loan clearly indicates that the agreement is a loan, not a rental or lease agreement. **SEE PLAINTIFF'S EXHIBIT A.**

19.     Further, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury

---

[1] Unless licensed by Florida as a Sales Finance Company or a Consumer Finance Company, interest is restricted to 18% annually. A search of public records shows Acima does not have, nor has ever had, such a license.

in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

20.      While the Loan theoretically allows for the early termination of the "lease," it required Mr. Garcia to return the cell phone to Plano, Texas, at his own expense.

21.      Upon information and belief, Acima's policies make it impossible, or nearly impossible, for a consumer to obtain a return authorization; typically, Acima instructs the consumer to take up any issue with the retailer where the purchase was made.

22.      The agreement was therefore not reasonably terminable by Mr. Garcia.

23.      Further, the agreement *automatically* transfers ownership of the cell phone to Mr. Garcia once all payments were made.

24.      Because Mr. Garcia could become the owner of the cell phone for no additional consideration, the Loan constituted a credit sale agreement subject to TILA. *See* 15 U.S.C. § 1602(h); *Taylor v. Timepayment Corp.*, Civil Action No. 3:18cv378 (E.D. Va. Mar. 31, 2019).

25.      Pursuant to TILA, Acima was required to disclose to Mr. Garcia the cost of financing charges assessed by Acima expressed as an annual percentage rate, and for the annual percentage rate and finance charge to be disclosed clearly and conspicuously in writing.

26.      Acima was also required by 15 U.S.C. § 1638(a)(8) to explain in detail the meaning of the terms "annual percentage rate" and "finance charge."

27.      Acima provided no TILA disclosure even mentioning the words "annual percentage rate," much less providing a disclosure which contained an accurate one.

28.      Acima willfully and intentionally omitted the legally required TILA disclosures as to not draw attention to the fact that its payment plan included illegal interest rates.

### Loan Was Void *Ab Initio*

29.     Acima is not a retailer and makes no money from the sale of consumer products directly; rather, it is a financial services company which makes a profit by offering financing to credit-challenged consumers who, overwhelmingly, cannot qualify for traditional credit.

30.     Acima was founded in 2013; it went from $97 million of revenue that year to $1.3 billion in 2020, after which it was acquired, in December 2020, by Rent-A-Center, a large, publicly-traded chain of "rent-to-own" stores.

31.     Acima claims to have a retail "partner network' with over 15,000 locations in the United States in aggregate, and aggressively markets its services to retailers to increase this number.

32.     Acima's website touts this fact to retailers it solicits to become a "partner" by stating retailers can "[i]ncrease sales volume by serving our universe of tens of millions of consumers that typically don't qualify for traditional *financing*." https://www.acima.com/digital, accessed July 21, 2022. (Emphasis added.)

33.     The cash price of the cell phone Mr. Garcia bought from TelFix was $1,073.98; the Loan agreement between Mr. Garcia and Acima required payments totaling $2,480.89 paid over the course of a year.

34.     This equates to an annual percentage rate exceeding 190%.

35.     Florida Statutes § 687.02(1) renders an extension of credit made at interest rates greater than 18% per year usurious.

36.     Florida Statutes § 687.071(3) renders an extension of credit made at annual interest rates greater than 45% a third-degree felony.

37.     Florida Statutes § 687.071(7) indicates any such extension of credit, and logically any debt stemming from such extension of credit, is void and unenforceable.

38.     Any person who willfully makes such a usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan, as such loans are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

39.     Indeed, even the recovery of the principal balance on extensions of credit made at usurious interest rates is impermissible under Florida law. *Rollins,* 519 So. 2d at 656.

40.     The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*,190 So.2d 415 (Fla. 2d DCA 1966).

41.     Because the Loan was subject to an annual interest rate exceeding 190%, which vastly exceeds the 45% limit as proscribed in Fla. Stat. § 678.071(3), the Loan is void *ab initio* and unenforceable in Florida, pursuant to Fla. Stat. § 687.071(7).

42.     The Loan therefore meets the definition of an *Unlawful Debt* per Fla. Stat. §772.102(2)(a)(3).

### Acima's Attempts to Collect the Debt

43.     Around October 2021, Acima began reporting the Loan to various nationwide *Consumer Credit Reporting Agencies* ("CRAs"), including Experian. **SEE PLAINTIFF'S EXHIBIT B.**

44.     Acima reported to Experian that Mr. Garcia made payments as agreed in October 2021, which, per the bi-weekly payment schedule, would equate to $203.16 (two payments of $101.58 each). *Id.*

45.     However, when Mr. Garcia was unable to make a payment in November and December 2021, Acima reported in February 2022 that the account had been "charged to profit and loss" and that $2,620 was due and owing.

46.     Acima's credit reporting thus further evidences that it considered the "lease" agreement to be a loan, since it was claiming the entire amount of the loan was due, just like an acceleration clause in an installment loan agreement.

47.     Alternately, Acima would have been claiming the aggregate amount of all rental payments – including "rental" payments for time periods not yet having occurred, through October 2023 – was owed by Mr. Garcia as of February 2022. Logically, a consumer cannot be "past due" on a rental payment for a time period which has not yet occurred.

48.     Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g., Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless (Fair Debt Collection Practices Act) cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

49.     Acima's false reporting to Experian has caused significant damage to Mr. Garcia's credit reports and scores, as well as to his credit files at other CRAs to which Acima reported data, such as Clarity Services.

## Defendants Violate EFTA by Requiring Electronic Payment

50.     Mr. Garcia was required to provide his bank routing and account number or debit card number when he applied for the Loan.

51.     Acima will not allow an application for credit to proceed without the consumer supplying bank account information.

52.     When Mr. Garcia was approved for a Loan, he was provided with a "payment authorization" to electronically sign along with other electronic documents.

53.     The "payment authorization" gives consent to the Defendant initiating ACH debits from his account (or debit card) to make the required bi-weekly loan payments, stating in part, "You authorize us to initiate an electronic fund transfer ("EFT") over the ACH network (or another network of our choosing) from any bank account (or if no bank account is specified, then any account or card) listed on your application, or subsequently authorize us to debit or charge, for any renewal payment provided in this Agreement by its renewal date. If this EFT is returned unpaid, you authorize us to charge any card or bank account provided to us for such payment." **SEE PLAINTIFF'S EXHIBIT A.**

54.     While couched as voluntary, the Defendants will not approve a loan application which does not contain a signed, "voluntary" electronic payment agreement.

55.     The Loan agreement, specifically paragraph 12, indicates that Mr. Garcia had no choice but to consent to electronic payments when applying for the Loan. *Id.*

56.     While a consumer like Mr. Garcia can elect to terminate the electronic payment agreement and make payments by check through the mail, such actions can be taken only *after* the loan is originated.

57.     Acima's business model of making unsecured subprime consumer loans is heavily predicated on being able to debit loan payments automatically on a bi-weekly basis – typically the schedule most consumers are paid their wages – thus giving Acima access to funds from the consumer's paycheck soon after it is deposited, thereby being the "first in line" to receive proceeds from the consumer's most recent wages.

58.     The EFTA "protects consumers by providing a 'basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'" *Bass v. Stolper, Koritzinsky, Brewster & Neider, S. C.*, 111 F.3d 1322, 1328 (7th Cir.1997) (quoting 15 U.S.C. § 1693(b)).

59.     "No financial institution or other person may condition an extension of credit to a consumer on the consumer's repayment by preauthorized electronic fund transfers...." 12 C.F.R. § 205.10(e)(1). *See also* 15 U.S.C. § 1693k(1).

60.     Thus, despite the ostensibly "voluntary" electronic payment agreement, in reality, Acima conditioned the Loan on Mr. Garcia, like all other consumers it serves, providing consent to ACH debits or debit card payments.

61.     The fact that the agreement can be modified or altered after execution does not mean Acima complied with the EFTA.

62.     Violation of § 15 U.S.C. 1693k(1) occurs at the moment the lender conditions electronic funds transfers. *See De La Torre v. CashCall, Inc.*, 56 F. Supp. 3d 1105, 1107-09 (N.D. Cal. 2014); *Federal Trade Commission v. Payday Financial LLC*, 2013 WL 5442387, at *8-9 (D. S.D. Sept. 30, 2013).

63.     Mr. Garcia has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE CRCPA – Fla. Stat. § 772.103(1)

64.     Mr. Garcia adopts and incorporates Paragraphs 1 – 63 as if fully restated herein.

65.     Acima, along with Acima Holdings, LLC and other persons, natural and otherwise, through their joint operation of Acima, constitute an "enterprise" under the CRCPA, Fla. Stat. §772.102(3).

66.     The Loan made by Acima to Mr. Garcia charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3).

67.     Thus, the Loan constitutes an "unlawful debt" under the CRCPA, Fla. Stat. §772.102(2)(a)(3).

68.     Acima received income derived directly or indirectly from the collection of the unlawful Loan.

69.     Acima utilized a portion of the proceeds derived from the collection of the unlawful Loan in the establishment or operation of an enterprise.

70.     Accordingly, Acima violated **Fla. Stat. § 772.103(1)**, and is liable to Mr. Garcia for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, for:

a.      Treble damages of at least $203.16, for a total of at least $609.48, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b.      Reasonable costs and attorneys' fees, pursuant to Fla. Stat. § 772.104(1); and,

c.      Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE CRCPA – Fla. Stat. § 772.103(2)

71.     Mr. Garcia adopts and incorporates Paragraphs 1 – 63 as if fully restated herein.

72.     Acima, along with Acima Holdings, LLC and other persons, natural and otherwise, through their joint operation of Acima, constitute an "enterprise" under the CRCPA, Fla. Stat. §772.102(3).

73.     The Loan made by Acima to Mr. Garcia charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3).

74.     Thus, the Loan constitutes an "unlawful debt" under the CRCPA, Fla. Stat. §772.102(2)(a)(3).

75.     Acima received income derived directly or indirectly from the collection of the unlawful Loan.

76.     Acima utilized a portion of the proceeds derived from the collection of the unlawful Loan in the acquisition of real property or in the establishment or operation of an enterprise.

77.     Accordingly, Acima violated **Fla. Stat. § 772.103(2)**, and is liable to Mr. Garcia for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(2).

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, for:

a.      Treble damages of at least $203.16, for a total of at least $609.48, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b.      Reasonable costs and attorneys' fees, pursuant to Fla. Stat. § 772.104(1); and,

c.      Such other relief that this Court deems just and proper.

## COUNT III
## <u>VIOLATIONS OF THE CRCPA – Fla. Stat. § 772.103(3)</u>

78.　　Mr. Garcia adopts and incorporates Paragraphs 1 – 63 as if fully restated herein.

79.　　Acima, along with Acima Holdings, LLC and other persons, natural and otherwise, through their joint operation of Acima, constitute an "enterprise" under the CRCPA, Fla. Stat. §772.102(3).

80.　　The Loan made by Acima to Mr. Garcia charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3).

81.　　Thus, the Loan constitutes an "unlawful debt" under the CRCPA, Fla. Stat. §772.102(2)(a)(3).

82.　　Acima associated with its parent companies, subsidiaries, and other persons, natural and otherwise, and participated in the affairs of the enterprise, which existed for the purpose of collection of unlawful debt.

83.　　Acima's participation in the enterprise caused Mr. Garcia to pay money toward the unlawful Loan.

84.　　Accordingly, Acima violated **Fla. Stat. § 772.103(3)**, and is liable to Mr. Garcia for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, for:

a.　　Treble damages of at least $203.16, for a total of at least $609.48, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b.　　Reasonable costs and attorneys' fees, pursuant to Fla. Stat. § 772.104(1); and,

c.　　Such other relief that this Court deems just and proper.

## COUNT IV
## <u>VIOLATIONS OF THE CRCPA – Fla. Stat. § 772.103(4)</u>

85.     Mr. Garcia adopts and incorporates Paragraphs 1 – 63 as if fully restated herein.

86.     The Loan made by Acima to Mr. Garcia charged an interest rate far in excess of the maximum lawful rate under Florida law, pursuant to Fla. Stat. § 687.071(3).

87.     Thus, the Loan constitutes an "unlawful debt" under the CRCPA, Fla. Stat. §772.102(2)(a)(3).

88.     Acima violated **Fla. Stat. § 772.103(4)** by conspiring with its subsidiaries, parent companies, and other persons, natural and otherwise, to collect unlawful debts through Acima.

89.     Acima knew that the purpose of the enterprise was to issue and collect unlawful debts.

90.     Acima agreed to participate in the conspiracy and agreed to the overall objective of the conspiracy – to collect unlawful debt.

91.     Accordingly, Acima violated Fla. Stat. § 772.103(4), and is liable to Mr. Garcia for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, for:

a.      Treble damages of at least $203.16, for a total of at least $609.48, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Fla. Stat. § 772.104(1);

b.      Reasonable costs and attorneys' fees, pursuant to Fla. Stat. § 772.104(1); and,

c.      Such other relief that this Court deems just and proper.

## COUNT V
## UNJUST ENRICHMENT

92.     Mr. Garcia adopts and incorporates paragraphs 1 – 63 as if fully stated herein.

93.     Mr. Garcia conferred a benefit to Acima in the form of payments totaling at least $203.16.

94.     Acima had no legal right to the collection of these payments and was therefore unjustly enriched.

95.     Acima knew that it had no legal right to the collection of these payments, as evidenced by its business model, but chose to accept the funds from Mr. Garcia regardless.

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, for:

a.     Actual damages for the payments conferred to the Defendants pursuant to the void Loan; and,

b.     Any other relief this Court deems equitable and proper under the circumstances

## COUNT VI
## VIOLATIONS OF TILA – 15 U.S.C. § 1632(a)

96.     Mr. Garcia adopts and incorporates paragraphs 1 – 63 as if fully stated herein.

97.     Acima engaged in a consumer credit transaction with Mr. Garcia when it financed a cell phone from TeleFix, which Mr. Garcia was to repay in monthly installments.

98.     The consumer credit transaction was closed-end and thus not open-ended.

99.     The financing charge exceeded $5 and the purchase price of the goods exceeded $75.

100.   Acima violated **15 U.S.C. § 1632(a)** in that Acima failed to make required disclosures, including the annual percentage rate and finance charge, clearly and conspicuously in writing.

101.   Acima knew it had an obligation to make this disclosure to Mr. Garcia under TILA, but pursuant to its business practices which intentionally obfuscate its unlawful rates of interest, it willfully failed to make such disclosures.

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, ordering:

a.   Damages of twice the finance charge of $1,406.91 (for a total of $2,813.82) assessed by Acima, pursuant to 15 U.S.C. § 1640(a)(2)(A)(i), or Mr. Garcia's actual damages, whichever are greater;

b.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1640(a)(3); and,

c.   Such other relief that this Court deems just and proper.

### COUNT VII
### VIOLATIONS OF TILA – 15 U.S.C. § 1638(a)

102.   Mr. Garcia adopts and incorporates paragraphs 1 – 63 as if fully stated herein.

103.   Acima engaged in a consumer credit transaction with Mr. Garcia when it financed a cell phone from TeleFix, which Mr. Garcia was to repay in monthly installments.

104.   The consumer credit transaction was closed-end and thus not open-ended.

105.   The financing charge exceeded $5 and the purchase price of the goods exceeded $75.

106.   Acima violated **15 U.S.C. § 1638(a)** in that Acima failed to make required disclosures, including the finance charge expressed as an annual percentage rate and descriptive explanations of the terms "finance charge" and "annual percentage rate," among others.

107.    Acima knew it had an obligation to make this disclosure to Mr. Garcia under TILA, but pursuant to its business practices which intentionally obfuscate its unlawful rates of interest, it willfully failed to make such disclosures.

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, ordering:

a.    Damages of twice the finance charge of $1,406.91 (for a total of $2,813.82) assessed by Acima, pursuant to 15 U.S.C. § 1640(a)(2)(A)(i), or Mr. Garcia's actual damages, whichever are greater;

b.    Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1640(a)(3); and,

c.    Such other relief that this Court deems just and proper.

## COUNT VIII
## VIOLATIONS OF THE FCCPA - Fla. Stat. § 559.72(9)

93.    Mr. Garcia adopts and incorporates Paragraphs 1 – 63 as if fully restated herein.

94.    Acima violated **Fla. Stat. § 559.72(9)**, by attempting to enforce Mr. Garcia's Loan, and by asserting the legal right to do so, when they collected, and attempted collection of the Loan via ACH withdrawals, emails, and calls to Mr. Garcia.

95.    Acima's actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiff and profiting from it.

96.    Acima knew of the illegal nature of the loans, as the Defendants have gone to great lengths to attempt to avoid Florida law through use of a *faux*-lease scheme.

97.    Accordingly, Acima is liable to Plaintiff for his actual damages and statutory damages of up to $1,000.00.

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima for:

a.    Statutory damages of **$1,000.00**, pursuant to Fla. Stat. § 559.77(2);

b.    Injunctive relief preventing Acima from attempting to collect the Loan from Mr. Garcia, pursuant to Fla. Stat. § 559.77(2);

c.    Reasonable costs and attorneys' fees, pursuant to Fla. Stat. § 559.77(2); and,

d.    Such other relief that this Court deems just and proper.

### COUNT IX
### VIOLATIONS OF THE EFTA, 15 U.S.C. § 1693k(1),

108.    Mr. Garcia adopts and incorporates paragraphs 1 – 63 as if fully stated herein.

109.    Acima violated 15 U.S.C. § 1693k(1) when it conditioned the approval of a loan upon Mr. Garcia agreeing to electronic payments, with his only real recourse being to modify such agreement after the loan was originated.

110.    Accordingly, Acima is liable to Mr. Garcia for statutory damages, actual damages, costs, and attorney's fees.

**WHEREFORE,** Mr. Garcia respectfully requests this Honorable Court enter judgment against Acima, ordering:

a.    Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1693m(a)(2)(A);

b.    Reasonable costs and attorneys' fees, pursuant to 15 U.S.C. § 1693m(a)(2)(A); and,

c.    Such other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Mr. Garcia hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **August 5, 2022**, by:

**SERAPH LEGAL, P. A.**

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com

*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com

1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

## **ATTACHED EXHIBIT LIST**

A      Plaintiff's Rental-Purchase Agreement with Acima
B      Plaintiff's Experian Consumer Disclosure, June 14, 2022 – Excerpt

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

**Information and Acknowledgement of Rental-Purchase Agreement**

**This transaction is a rental-purchase agreement ("Agreement") with Acima or its subsidiary. <u>This is not a loan or credit transaction.</u> The Agreement includes a 90 day Early Purchase Option. This Early Purchase Option may be an amount greater than the retailer's sale price and not "same as cash."**

You understand that by signing the Agreement, Acima will buy the property you selected from the retailer and then lease that property to you.

Acima is the owner of the property until you have executed one of the purchase terms contained within the Agreement. Once you've paid the total of all renewal payments, or exercised an Early Purchase Option, ownership will transfer to you. The least expensive option to purchase the property under the Agreement must be exercised within 90 days of delivery. Renewal payments are still due even if you intend to purchase the property later.

Renewal payments will be automatically withdrawn from your bank account, charged to your card, or made at another authorized vendor or payment processor, depending upon information you provided us throughout the lease origination process. Charges will appear on your bank statements as "Simple Acima" and not the name of the retailer where you selected the property.

You may terminate the Agreement at any time, without penalty, and stop unaccrued renewal payments by returning the property to Acima and paying any past due renewal payments. You will not receive a refund of any payments accrued and paid to Acima while in possession of the property.

The Agreement includes reinstatement rights that may allow you to get returned property back, as described in the Agreement.

Full terms are contained in the Agreement, a copy of which will be mailed or e-mailed to you and is or will be available on our Customer Portal at https://customer.acima.com/. The Agreement sent is computer-generated and may not include your wet signature. You previously received, and agreed to in the Application, the Application Terms, Privacy Policy, Terms of Service, and ESIGN Agreement.

You agree by signing this acknowledgement that you read, understand, and received a copy of this document and the Agreement.

Daniel Garcia

_____
Customer Name

10/15/2021

_____
Date

6.0

LEASE NO: ▮
LEASE DATE: 10/15/2021
1

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

acima

(FL) RENTAL-PURCHASE AGREEMENT
LEASE NO: █
LEASE DATE: 10/15/2021

When you sign the Agreement, Acima or one of its subsidiaries will purchase the Property you have selected at a retailer's store and enter a rental-purchase contract with you for the Property. The following table shows certain financial details of the lease:

| TOTAL OF PAYMENTS/TOTAL COST/RENT-TO-OWN PRICE | COST OF RENTAL | ACIMA CASH PRICE | |
|---|---|---|---|
| $2,480.89 | $1,406.91 | $1,073.98 | |
| You must pay this amount to own the property if you make all the regular Renewal Payments (excludes tax). You can buy the property for less under the early purchase option. | Amount over Acima Cash Price you will pay if you make all regular Renewal Payments (excludes tax). | Property available at this price for cash from the Lessor at the time of the Agreement. See about your early purchase option rights. | |
| | AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | RENTAL PERIOD |
| | $92.35/every-other-week, plus $9.23 every-other-week (for Optional Liability Damage Waiver) | 26 | 365 DAYS |
| | Taxes will be added to all payments. | | This represents the duration of the Lease if all regularly scheduled payments are made. |
| The rental property is NEW and is being acquired by the lessor on the lease date above. | | | |

BY SIGNING YOUR AGREEMENT, YOU ACKNOWLEDGE AND AGREE THAT YOU RECEIVED THE ABOVE TABLE.

6.0



LEASE NO: █
LEASE DATE: 10/15/2021
2

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

**LEASE WITH PURCHASE RIGHTS**

**THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION (SEE ¶ 14). UNLESS YOU PROMPTLY REJECT THE ARBITRATION PROVISION (SEE ¶ 14), THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS PROCEEDING.**

| | |
|---|---|
| LESSOR/ OWNER | ACIMA DIGITAL, LLC, 5501 Headquarters Dr., Plano, TX 75024<br>Phone: (801) 297-1982 \| Online Portal: https://customer.acima.com/ |
| LESSEE/POTENTIAL PURCHASER | Daniel Garcia |

1. **Definitions:** "Agreement" means this Rental-Purchase Agreement. "You" and "your" mean the person signing this Agreement as Lessee. "We," "our," and "us" mean Acima and its subsidiaries, successors, and assigns, as Lessor/Owner of the Property. "Initial Rent Payment" means the payment required to consummate this Agreement. "Renewal Payment(s)" mean periodic or regular lease payments after the Initial Rent Payment for use of the leased Property. "Other Charges" mean any and all applicable charges, costs, and fees allowed for under this Agreement, which may accrue from time to time, after the commencement of the Agreement, and are not included in Renewal Payments. "Days" means calendar days unless otherwise specified. "Optional Liability Damage Waiver Payment(s)" mean periodic or regular payments incurred for Optional Liability Damage Waiver (LDW) services. "Property" means the item(s) that are the subject matter of this Agreement; specifically, the NEW note 10 plus 512gb 3 tempered glass case air pods .

2. **Payments:** An Initial Rent Payment of $80.00, plus tax of $6.00, totaling $86.00 is due when this Agreement is signed, and additional (1) Renewal Payments of $92.35, plus tax of $6.92, totaling $99.27, and (2) Optional Liability Damage Waiver payment of $9.23, plus tax of $0.00, totaling $9.23, are due every-otherweek thereafter while the Agreement remains in force, commencing on the day indicated in your lease application that you receive income or benefits, but no sooner than 7 days after your delivery date. Renewal Payments are made in advance. Acima charges and collects tax with each Renewal Payment when required to do so by your state. Your payment amount may change to the extent the tax rate changes after the date of this Agreement.

3. **Purchase Terms:** The Acima Cash Price is $1,073.98 (which may include a delivery fee negotiated by you), and is the amount we would charge for a cash sale of the Property. The Acima Cash Price contains a $480.00 markup over the sales invoice price. You may return the Property at any time with no obligation or penalty. This Agreement will terminate and you will acquire ownership of the Property if you make the Initial Rent Payment and 26 Renewal Payments totaling $2,480.89, ("Total Cost"). This is $1,406.91 more than the Acima Cash Price (excluding tax). The Total Cost does not include taxes, or Other Charges, which shall be separately disclosed in the Agreement. You can purchase the Property and terminate this Agreement within the first 90 days of the Agreement by paying us the Acima Cash Price, plus taxes, and Other Charges due, minus any payments you have made, plus a $50.00 Purchase Fee. After 90 days, you may purchase the Property by paying us an amount equal to any payment then due or overdue plus Other Charges due and 65.0% of the total remaining Renewal Payments.

4. **Other Charges:** Not included in Renewal Payments: i) Costs of Lost/Destroyed/Damaged Property; ii) Repossession Costs; iii) Collection Costs; iv) Re-delivery Costs; v) $25.00 Returned-Payment Fee (or the maximum amount permitted by law) for any payment that is returned to us unpaid; vi) Late Payment Charges. If you pay monthly and fail to make a Renewal Payment within 5 business days of the renewal date, or if you pay more frequently than monthly and fail to make a Renewal Payment within 3 business days of the due date, you will be assessed a fee of $5; and vii) $50.00 Purchase Fee.

5. **Ownership and Nature of Agreement. WE OWN THE PROPERTY.** This Agreement is a lease; a lease is a legal arrangement whereby the lessee/renter (you) agrees to pay the lessor/owner of the property (us) for use of the property for a specified period of time. You make Renewal Payments for the use of the Property for each renewal period only. You do not obtain ownership rights until you pay the Total of Payments plus all applicable taxes or exercise an Early Purchase Option. You do not have the right to keep the Property if you do not make timely Renewal Payments. If you do not want to lease the Property but would rather purchase the Property now, you should consider cash or credit terms that may be available to you.

6. **Damage or Loss of Property:** You are liable for the fair market value of the Property if, and as of the time, it is lost, stolen, damaged in excess of normal wear and tear, or destroyed. We do not carry insurance on this Property. You are responsible for its safety until it is returned to us. If the Property is lost, stolen, damaged, or destroyed during the Agreement term, or you do not return the Property to us when required to do so, you must pay us, in addition to all other amounts you owe us: (a) the amount you would owe had you paid to acquire the Property; (b) the fair market value of the Property as of the date it is lost, stolen, damaged, or destroyed; or (c) the cost to repair the Property, whichever is least. Disclosure of Condition of Property: You understand the Property may be new or used. You agree that we have not made any representations of the Property other than those contained in this Agreement. If you notice any damages to the Property, other than those disclosed by us, you agree to inform us of the damages before signing, and we will amend this Agreement accordingly. By signing this Agreement, you agree that you are satisfied with the condition of the Property and that no other damages exist other than those disclosed by us as follows: None.

7. **Maintenance and Warranty:** You are responsible for maintaining the Property in good working condition during the Agreement term. You must notify us immediately if the Property is damaged and send us written records of any repairs. If any part of a manufacturer's warranty, or third-party warranty exists and covers the Property at the time you acquire ownership, the warranty will be transferred to you, if allowed by the terms of the warranty. To the extent permitted by law, we do not provide any Warranty of Merchantability or Fitness for a Particular Purpose, either Express or Implied, on the Property. You are renting the Property "as is" and "with all faults." You must keep the Property at the address listed above, unless we give you permission to move it.

8. **Minimum Agreement Term:** The minimum rental period is the time between when you receive the Property and your first Renewal Payment. You agree to make your first Renewal Payment outlined within this Agreement. If you choose to return the Property thereafter, you must pay the unpaid Daily Lease Rate for the time you possess the Property, plus Other Charges due. The "Daily Lease Rate" is the Total of Payments divided by the number of days of the Rental Period. Your Rental Period is renewed with each Renewal Payment but will not exceed 365 days. Your Daily Lease Rate is $6.80.

6.0

LEASE NO.:
LEASE DATE: 10/15/2021

3

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

9. **Termination:** We may terminate this Agreement and recover the Property if you breach this Agreement. You may terminate this Agreement at any time without penalty by returning the Property on our directions, and by paying us any delinquent Renewal Payments, plus Other Charges due. **Collection Costs:** If you default on this Agreement, you may be responsible for all collection costs we incur. We may, at our discretion, refer delinquent accounts to a third-party collection agency. **Right of Repossession:** If this Agreement terminates due to your breach of the Agreement, and you fail to return the Property, we have the right to repossess the Property. You agree to pay all costs of repossession incurred, to the extent permitted by law. You agree that there is no refund of an Initial Rent Payment or any Renewal Payment for return or surrender of the Property before the end of a lease period.

10. **Reinstatement:** If you fail to make a timely Renewal Payment you are in breach of this Agreement. You have the right to reinstate the original Agreement without losing any rights or options previously acquired under the Agreement if you promptly surrender the Property to us upon our request and tender the reinstatement fees within 60 days after the expiration of the last rental period for which you made a timely payment. Before reinstatement, we may require you to pay delinquent rental payments, including any Other Charges incurred, a reinstatement fee of not more than $5. If you reinstate, we will furnish you with the same Property or property of comparable quality and condition. Reinstatement results in a continuation of the Agreement. You are responsible for the reasonable costs of pickup.

11. **Payment Method:** We will initiate electronic fund transfers from the bank account and/or credit card (or any substitute account you designate) provided by you in your application.

12. **Payment Authorization:** You authorize us to initiate an electronic fund transfer ("EFT") over the ACH network (or another network of our choosing) from any bank account (or if a bank account is specified, then any account or card) listed on your application, or subsequently authorize us to debit or charge, for any renewal payment provided in this Agreement by its renewal date. If this EFT is returned unpaid, you authorize us to charge any card or bank account provided to us for such payment. If your payment is returned unpaid, you authorize us to initiate a one-time EFT from your bank account or card to collect a fee of $25.00. You agree that we may resubmit any returned EFT or card charge as permitted by law and network rules. We are not responsible for any bank fees you incur resulting from returned payments. Instead of or in addition to any of the EFTs and card charges described in this section, you also authorize us to process any EFTs or card charges you subsequently confirm by phone, text message, or email. If we make an error in processing an EFT or card charge, you authorize us to initiate an EFT or card charge to correct the error. You may terminate this authorization to initiate EFTs and to charge the card. You may modify any bank account and card information, or change your scheduled payment dates, if the new payments coincide with the dates you receive income and do not materially increase the Agreement term. We will honor your termination or modification request if you contact us by phone at (801) 297-1920, or in writing at PO Box 1667, Draper, UT 84020, in time for us to receive your request at least 3 business days before the payment is scheduled to be made or far enough in advance for us to reasonably act on it. For purposes of this Agreement, our business days are Monday through Friday, holidays are not included. If any payment cannot be obtained by EFT or card charge, you remain responsible for such payment.

13. **Reporting:** You authorize and instruct us to obtain a consumer credit report from a consumer reporting agency of our choosing, for purposes of verifying information on your application. You approve and acknowledge that we may report information about your lease and payment history to credit bureaus. You understand that we will not report your account as paid to any credit bureau until all payments have settled. You understand that if any processed and/or cleared payments are rescinded after we were authorized to process them, we reserve the right to re-open your account and report accordingly to any credit bureau. If you believe that any information about your lease that we may have received from, or furnished to a consumer reporting agency is fraudulent, or if you believe that you have been the victim of identity theft in connection with any lease made by us, you may request a copy of your lease records by writing to us at Acima, ATTN: Reporting Compliance, PO Box 1667, Draper, UT 84020.

14. **JURY TRIAL WAIVER AND ARBITRATION CLAUSE:** By signing, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause").

**Acima Digital, LLC**

### CONSUMER ARBITRATION AGREEMENT

Consumer Lease, Rental-Purchase Agreement, or Retail Installment Sale Contract

**PLEASE READ THIS ARBITRATION AGREEMENT. IT IS BINDING AND ENFORCEABLE UNLESS YOU SEND IN A REJECTION NOTICE, AS SET OUT IN PARAGRAPH (A) BELOW.**

This Arbitration Agreement ("Agreement") is between Acima and the Consumer. As used in this Agreement, the terms "Consumer" and "Consumers" mean the customers who sign this Agreement. The term "Consumer Contract" means the consumer lease, rental-purchase agreement, or retail installment contract between the Consumers and Acima. The terms "you" and "your" mean the Consumer, customer, lessee, renter, user, buyer, and other third-party beneficiaries of the items or services Acima is providing, will provide, or has provided to you. And the term "Acima" means Acima Digital, LLC, its parents, subsidiaries, affiliate entities (including but not limited to Preferred Lease, RAC Acceptance, Acceptance Now, Get It Now, and Home Choice) predecessors, or successors in interest. The Federal Arbitration Act (9 U.S.C. §§ 1-16) ("FAA") governs this Agreement, which evidences a transaction involving interstate commerce.

Except as otherwise provided in this Agreement, you and Acima agree to resolve by individual, final, and binding arbitration any and all claims or controversies, past, present, or future, that Acima may have against you or that you may have against Acima and/or (i) its directors, members, managers, employees, or agents in their capacity as such or otherwise, (ii) its successors or assigns; and (iii) its clients and host stores, in accordance with the terms and procedures set forth in this Agreement. Each of the entities and/or individuals listed in this paragraph can enforce this Agreement.

**(A)      Your Right to Reject:** If you want to reject this Agreement, you must send a written Rejection Notice, by certified mail, return receipt requested, to: Acima, ATTN: Compliance Department, PO Box 1667 Draper, UT 84020. The Rejection Notice must (i) state that you are rejecting this Agreement; (ii) provide your name, address, and phone number; and (iii) provide the agreement number from the Consumer Contract you entered into with Acima, which is incorporated into this Agreement as though fully set forth. A Rejection Notice is effective only if it is signed by all Consumers who signed the Consumer Contract with Acima and postmarked within fifteen (15) days

60

LEASE NO:
LEASE DATE: 10/15/2021

4

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

after the date of those signatures. Acima will acknowledge your rejection in writing. You should retain the acknowledgement to establish rejection of this Agreement. If you do not receive the acknowledgement from Acima within fifteen (15) days from the date you sent the Rejection Notice to Acima, then you should contact the Acima Legal Department by mail or by email at legal@acima.com. A Rejection Notice applies only to this Agreement and does not affect the validity or enforceability of any past or future Arbitration Agreements between you and Acima.

(B)   **What Claims Are Covered:** You and Acima agree that, in the event of any covered dispute or claim between us, you and Acima agree to have that dispute or claim resolved by final and binding arbitration. This agreement to arbitrate is intended to be interpreted as broadly as the FAA allows. Claims and disputes subject to arbitration include but are not limited to:

 &bull; claims arising under, arising out of, or relating in any way to any Consumer Contract entered into between you and Acima at any time and/or any services rendered under or that relate to any such Consumer Contract;

 &bull; claims arising out of or relating in any way to your interactions with or any actions taken by Acima or any of its employees or agents, including but not limited to allegations that those employees or agents acted improperly in terminating your Consumer Contract, repossessing goods, or making complaints or reports about you to law enforcement, credit reporting bureaus, or any other third party;

 &bull; claims that arose before the execution of this Agreement or any current or prior Consumer Contract between you and Acima, such as claim related to advertising or disclosures;

 &bull; claims that arise after the termination of any Consumer Contract between you and Acima;

 &bull; claims that are based on any legal theory whatsoever, including negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation, or ordinance; and

 &bull; except as specified in the Class Action Waiver below, any and all disputes relating to the interpretation, applicability, enforceability, scope, waiver, or formation of this Agreement, including but not limited to any contention that all or any part of this Agreement is void or voidable.

(C)   **What Claims Are Not Covered:** This Agreement does not cover:

 &bull; criminal proceedings and/or making a report or filing a claim with any law enforcement agency, initiated by you or Acima; initiating or participating in criminal proceedings and/or making a report of filing a claim with any law enforcement agency shall not be a waiver of any right to arbitrate under this Agreement, but any action by either party for abuse of process, improper criminal proceedings, or similar action arising out of any law enforcement/criminal proceedings/claim with any law enforcement agency is covered by this Agreement and must be arbitrated; and

 &bull; disputes that applicable federal statutes exempt from arbitration, overriding the FAA.

(D)   **Small Claims Court Option:** Notwithstanding the foregoing, you and Acima each have the right to file an individual action in small claims court if it is within the jurisdiction of the small claims court and remains in that court. The defendant or counterclaim defendant in such a small claims court action may not elect to have the claim resolved by binding arbitration. If your jurisdiction permits small claims court judgments to be appealed to a court of general jurisdiction for a trial de novo, we agree that any such appeal shall be resolved in arbitration in accordance with this Agreement instead of in that court of general jurisdiction.

(E)   **Class Action Waiver:** You and Acima agree that arbitration shall be conducted on an individual basis only. There will be no right or authority for any dispute to be brought, heard, or arbitrated as a class, mass, or representative action or for the Arbitrator to award declaratory or injunctive relief on behalf of absent parties ("Class Action Waiver"). Nor shall the Arbitrator have any authority to hear or preside over any such dispute. In addition, although the Arbitrator shall be bound by rulings in prior arbitrations involving the same Consumer to the extent permitted by applicable law, the Arbitrator shall not be bound by rulings in prior arbitrations involving different Consumers. In the event a final judicial determination is made that the Class Action Waiver is unenforceable and that a class, mass, or representative action or request for public injunctive relief may proceed notwithstanding the existence of this Agreement, the Arbitrator is nevertheless without authority to preside over a class, mass, or representative action or one seeking public injunctive relief. Instead, the claims or requests for particular remedies as to which the Class Action Waiver is unenforceable shall be severed and decided by a court of competent jurisdiction, and all other claims (and requests for other remedies) shall be arbitrated in accordance with this Agreement.

Regardless of anything else in your Consumer Contract, this Agreement, or the arbitration provider's rules or procedures, the interpretation, applicability, scope, and enforceability of this Class Action Waiver, including but not limited to any claim that all or any part of this Class Action Waiver is void or voidable, may be determined only by a court—not by the Arbitrator.

(F)   **Starting or Initiating Arbitration:** A party who intends to seek arbitration must first send to the other, by certified mail, return receipt requested, a written Notice of Dispute. A Notice of Dispute to Acima should be addressed to: Acima, ATTN: Compliance Department, PO Box 1667, Draper, UT 84020. Notices of Dispute to you will be sent to you at the last known address you provided to Acima. A Notice of Dispute must (i) provide your name, address, phone number, and Consumer Contract number; (ii) describe the nature and basis of the claim or dispute; and (iii) set forth the specific relief sought. You and Acima agree that any statute of limitations applicable to any claims described in a Notice of Dispute shall be deemed to be tolled for thirty (30) days after receipt of that Notice of Dispute.

If Acima and you do not reach an agreement to resolve the claim within thirty (30) days after the Notice of Dispute is received, the party sending the Notice of Dispute may commence an arbitration with the American Arbitration Association ("AAA") by sending written notice to the other party and to the AAA by certified mail, return receipt requested. A written request for arbitration should be made as soon as possible after the event or events in dispute so that the arbitration of any differences may take place promptly. Requests for arbitration by you should be sent to: Acima, ATTN: Compliance Department, PO Box 1667, Draper, UT 84020. Requests for arbitration by Acima will be sent to you at the last known address you provided to Acima. Requests for arbitration also should be sent to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. The AAA's current address also may be found on its web site at www.adr.org. Requests for arbitration must be clearly marked "Request for Arbitration," include your name, address, phone number, and Consumer Lease Number; and provide a short statement of the claim and the relief that is being sought.

(G)   **The Arbitration Process:** Arbitration is more informal than a lawsuit in court. In arbitration you and Acima each give up the right to a trial by judge or jury. The arbitration will be administered by the AAA and, except as provided in this Agreement, shall proceed in accordance with the AAA's Consumer Arbitration Rules ("AAA Rules") in effect at the time the arbitration commences; however, if there is a conflict between the

6.0

LEASE NO: [redacted]
LEASE DATE: 10/15/2021

5

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

AAA Rules and this Agreement, this Agreement shall govern. The AAA Rules are available at www.adr.org, by calling the AAA at 1-800-778-7879 or its then current telephone number as provided on its web site, or by sending a written request to: American Arbitration Association, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. If the AAA is unavailable or unwilling to administer the matter, the parties may agree to or a court of competent jurisdiction shall select another arbitration provider to administer the arbitration or otherwise fulfill the duties of the AAA under this Agreement. Any such substitute arbitration provider shall apply the AAA Rules, as modified by this Agreement. Unless the parties agree otherwise, the Arbitrator shall be either an attorney who is experienced in commercial law and licensed to practice law in at least one state or a retired judge from any jurisdiction (the "Arbitrator"). Unless the parties agree otherwise, the arbitration shall take place in the U.S. city or county in which you reside at the time arbitration is commenced.

For claims seeking relief valued at $75,000.00 or less (to both you and Acima), excluding attorney's fees and costs, the AAA shall appoint the Arbitrator in accordance with its rules and procedures. For all claims seeking relief above $75,000.00 in value (to either you or Acima), excluding attorney's fees and costs, unless prohibited by the AAA (in which case the AAA's rules and procedures for arbitrator selection shall apply), the Arbitrator shall be selected as follows: The AAA shall give each party a list of five (5) arbitrators drawn from its roster of arbitrators. Each party shall have ten (10) calendar days from the receipt of the list to strike all names on the list it deems unacceptable. If only one (1) common name remains on the lists of all parties, that individual shall be designated as the Arbitrator. If more than one (1) common name remains on the lists of both parties, the parties shall strike names alternately from the list of common names until only one (1) remains. The party who did not initiate arbitration shall strike first. If no common name remains on the lists of all parties, the AAA shall furnish an additional list of five (5) arbitrators from which the parties shall strike alternately, with the party who initiated arbitration striking first, until only one (1) name remains. That person shall be designated as the Arbitrator.

Subject to the Class Action Waiver, the Arbitrator may award any party any remedy to which that party is entitled under applicable law (including without limitation legal, equitable, and injunctive relief), but such remedies shall be limited to those that would be available to a party in his/her/its individual capacity in a court of law for the claims presented to and decided by the Arbitrator. Except to the extent preempted by the FAA, the Arbitrator shall apply the substantive law, including but not limited to the applicable statutes of limitations (and the law of remedies, if applicable) of the state of the Consumer's mailing address with Acima at the time arbitration commences, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems necessary. Either party may file a motion to dismiss and/or a motion for summary judgment.

Any party may arrange for a court reporter to provide a stenographic record of the proceedings in accordance with the AAA Rules. Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon the evidence that is presented. Upon request at the close of the hearing, either party shall be given leave to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

The Arbitrator shall render an award by reasoned written opinion no later than thirty (30) days from the date the arbitration hearing concludes or the post-hearing briefs (if requested) are received, whichever is later, unless the parties agree otherwise. The opinion shall be in writing and include the factual and legal basis for the award. Before the Arbitrator issues this award, neither Acima nor you should disclose the substance of any settlement offers to the Arbitrator.

Each party shall have the right to take the deposition of one (1) individual and any expert witnesses designated by the other party. Each party shall have the right to send requests for production of documents to any party, consistent with applicable legal privileges, the informal and expedited nature of arbitration, and each party's right to a fundamentally fair hearing. At either party's request, the Arbitrator may allow additional discovery. Additional discovery is also permitted by the parties' mutual agreement in writing.

(H)    Arbitration of Claims of $10,000.00 or Less. If your claim seeks relief valued at $10,000.00 or less (to both you and Acima), excluding attorney's fees and costs, and the Arbitrator issues you an award that is greater than the value of Acima's last written settlement offer made before the Arbitrator was selected, then Acima will (i) pay you $10,000.00 ("the alternative payment"); and (ii) pay your attorney, if any, the amount of attorney's fees and reimburse any expenses (including expert witness fees and costs) that your attorney reasonably accrued for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium"). If your claim seeks relief valued at $10,000.00 or less (to both you and Acima), excluding attorney's fees and costs, and Acima did not make a written offer to settle the dispute before the Arbitrator was selected, you and your attorney will be entitled to receive the alternative payment and the attorney premium, respectively, if the Arbitrator issues you any relief on the merits. The Arbitrator shall make any rulings and resolve disputes as to the payment and reimbursement of fees, expenses, the alternative payment, and the attorney premium upon request from either party made within fourteen (14) days of the Arbitrator's ruling on the merits. The alternative payment and attorney premium are available only for arbitrations in which (i) you seek relief valued at $10,000.00 or less (to both you and Acima), (ii) you have provided Acima with thirty (30) days' notice of the dispute as required by Paragraph (F); and (iii) you have not disclosed the substance of any settlement offer by Acima to the Arbitrator before an award on the merits is issued. In assessing whether an award that includes attorney's fees or expenses is greater than the value of Acima's last written settlement offer, the Arbitrator shall include in his or her calculations the value of any attorney's fees or expenses you reasonably incurred before Acima's settlement offer. If you are entitled to statutory attorney's fees, then the Arbitrator shall decide any award of attorney's fees, but in no event will you be entitled to a recovery of both the attorney premium and an award of statutory attorney's fees. If, after commencing arbitration, you amend your claim to include new or different claims or to request different or greater relief than you initially requested, the AAA or the Arbitrator shall stay further arbitration proceedings for thirty (30) days. During that time, Acima may make a written settlement offer. If not accepted, following the issuance of the award, that offer will be used by the Arbitrator to determine whether you are entitled to the alternative payment and whether your attorney, if any, is entitled to the attorney premium. If the AAA appointed an emergency arbitrator to decide a request for emergency relief before the regular Arbitrator who decided the merits of the claims was selected, Acima's last written settlement offer made before the appointment of the later-selected regular Arbitrator shall be the offer used to determine eligibility for the alternative payment and attorney premium.

(I)    Judicial Review: Judicial review shall be governed by the Federal Arbitration Act 9 U.S.C. §§ 9-11. The decision of the Arbitrator may be entered and enforced as a final judgment in any court of competent jurisdiction.

60

LEASE NO: 
LEASE DATE: 10/15/2021
6

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

**(J)**       **Arbitration Fees and Costs:** Acima will pay all filing, administration, and arbitrator fees assessed by the AAA for any arbitration that Acima commences. Acima also will pay all such fees for any arbitration that you commence seeking relief valued at $75,000.00 or less (to both you and Acima), excluding attorney's fees and costs. If, however, the Arbitrator concludes that your claim is frivolous or has been brought for an improper purpose (as measured by the standards of Federal Rule of Civil Procedure 11(b)), then the payment of all such fees shall be governed by the AAA Rules, and you agree to reimburse Acima for any monies it paid on your behalf that would be your responsibility under the AAA Rules. In addition, if you commence an arbitration seeking relief valued above $75,000.00 (to either you or Acima), excluding attorney's fees and costs, the payment of all such fees shall be governed by the AAA Rules. The Arbitrator shall determine all factual and legal issues regarding the payment and/or apportionment of said fees and costs.

After Acima receives notice that you have commenced arbitration in accordance with this Agreement of a claim seeking relief valued at $75,000.00 or less (to both you and Acima), excluding attorney's fees and costs, Acima will promptly reimburse you for your payment of the filing fee. The filing fee currently is $200 but is subject to change by the AAA. If you are unable to pay this fee, Acima will pay it directly upon receiving a written request at the Acima address listed in Paragraph (F). In the event applicable law requires a different allocation of arbitral fees and costs in order for this Agreement to be enforceable, then such law shall be followed.

Subject to Paragraph (H) above, each party shall pay for its own costs and attorney's fees, if any. However, if applicable law would entitle a party to an award of reasonable attorney's fees, or if there is a written agreement providing for attorney's fees, the Arbitrator may award such fees as provided by law, except to the extent such an award would be barred by Paragraph (G) above.

**(K)**       **Interstate Commerce:** You understand and agree that Acima is engaged in transactions involving interstate commerce and that the Federal Arbitration Act therefore governs this Agreement.

**(L)**       **Sole and Entire Agreement:** This is the complete Agreement of the parties on the subject of arbitration of claims or disputes. This Agreement to arbitrate shall survive the termination of any Consumer Contract you entered into with Acima. Unless this Agreement in its entirety is deemed void, unenforceable, or invalid, this Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability, or meaning of this Agreement, except as specifically set forth in this Agreement.

**(M)**       **Construction:** Subject to the Class Action Waiver above, if any provision of this Agreement is adjudged to be void or voidable or otherwise unenforceable, in whole or in part, such provision shall be severed from this Agreement and the adjudication shall not affect the validity of the remainder of the Agreement. All remaining provisions shall remain in full force and effect. A waiver of one or more provisions of this Agreement by any party shall not be a waiver of the entire Agreement. For convenience, this Agreement has page numbers starting at page 1; however, nothing about the pagination or headings in this Agreement is intended to change the intent and legal effect that this Agreement is incorporated into the Consumer Contract and is part of the same set of documents comprising the Consumer Contract. You and Acima agree that an electronic copy or photocopy of this Agreement shall have the same force and effect as the original.

**(N)**       **Consideration:** The mutual obligations by you and Acima to arbitrate differences provide consideration for each other.

### ACKNOWLEDGEMENT

BY SIGNING BELOW, YOU ACKNOWLEDGE THAT: (1) YOU HAVE READ THIS ENTIRE ARBITRATION AGREEMENT CAREFULLY; (2) YOU ARE ENTERING INTO THIS ARBITRATION AGREEMENT VOLUNTARILY; (3) YOU HAVE THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT IN ACCORDANCE WITH PARAGRAPH (A) ABOVE; AND (4) YOU HAVE BEEN PROVIDED WITH A DUPLICATE SIGNED COPY OF THIS ARBITRATION AGREEMENT.

Daniel Garcia

X_____              X_____
**LESSEE**                                        Reed Farnsworth, Authorized Rep., Acima Digital, LLC

**Print and retain a hard copy or electronic copy.**

**15. MISCELLANEOUS: Restrictive Endorsement:** We have the right to accept any check marked "payment in full" or any other restrictive endorsement without losing any of our rights to collect on the entire amount you owe us. **Governing Law, Venue:** This Agreement is governed by the laws of the state where you live. Venue for any dispute arising out of this Agreement will be the county where you live. **Severability:** If any provision of this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement will remain in full force and effect. You understand that time is of the essence in this Agreement. **Entire Agreement:** This Agreement represents the entire agreement between you and us concerning the Property.

**16. COMMUNICATION & MARKETING:** You understand and agree that we may monitor and/or record any of your phone conversations with any of our representatives. We may use automated telephone dialing, text messaging systems, and electronic mail to provide messages to you about your Agreement. You understand that when you receive such texts, calls, or e-mails, you may incur a charge from your communications provider. You consent to (i) contact at any address (including e-mail) or telephone number (including wireless cellular or residential landline) that

6.0                                                                                                  LEASE NO: 
                                                                                                            LEASE DATE: 10/15/2021
                                                                                                                                  7

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

you provide; (ii) any means of communication to reach you; (iii) the use of automated dialing systems and/or prerecorded messages; and (iv) text messages sent to your phone. No such contact will be deemed unsolicited or unauthorized. You understand that receipt of goods and/or services is not conditioned upon your consent provided herein. You consent to be contacted, from time to time, by Acima, its affiliates, vendors, agents, successors and assigns, regarding your account, for collection purposes, and for telemarketing, mail, and email marketing purposes such as promoting goods and/or services at the telephone numbers and addresses provided to us.

*Right to Opt-out:* You understand you may opt-out of promotional communications at any time by writing to PO Box 1667, Draper, UT 84020 or by email at privacy@acima.com.

| Initial Rent Payment | Renewal Payment Amount | Renewal Payment Frequency | Number of Renewal Payments |
|---|---|---|---|
| $86.00 | $99.27 | every-other-week | 26 |

**NOTICE TO LESSEE**
**(1) DO NOT SIGN THIS RENTAL PURCHASE AGREEMENT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO AN EXACT COPY OF THIS AGREEMENT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

**BY SIGNING THIS AGREEMENT: (1) YOU AGREE TO ALL ITS TERMS, INCLUDING THE EFT AND CARD CHARGE AUTHORIZATION (¶ 12) AND ARBITRATION PROVISION (¶ 14); AND (2) YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT.**



Daniel Garcia

x_____
**LESSEE**

x_____
Reed Ainsworth, Authorized Representative, Acima Digital, LLC

6.0

LEASE NO: A▮▮▮▮
LEASE DATE: 10/15/2021
5

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

## Exhibit B

You can purchase the Property at any time during the first 90 days of the Agreement by paying us the Acima Cash Price plus tax and any Other Charges due, minus any payments you have made. You have the right to acquire ownership of the Property at any time after the first 90 days by tendering to us an amount equal to all past due payments and fees, plus an amount equal to 65.0% of all Renewal Payments remaining under the Agreement. You must affirmatively elect to exercise the Early Purchase Option. In no event shall the Early Purchase Option Amount be less than the amount of one Renewal Payment.

The table below shows the amount required to exercise the Early Purchase Option after each rent payment, assuming each rent payment is paid on time.

| Rent Payment # | Rent Payment Amount | Remaining Total of Rent Payments | Early Purchase Option Amount |
|---|---|---|---|
| 1 | $80.00 | $2,400.89 | $1,043.98 |
| 2 | $92.35 | $2,308.54 | $951.63 |
| 3 | $92.35 | $2,216.19 | $859.28 |
| 4 | $92.35 | $2,123.84 | $766.93 |
| 5 | $92.35 | $2,031.49 | $674.58 |
| 6 | $92.35 | $1,939.14 | $582.23 |
| 7 | $92.35 | $1,846.79 | $1,200.41 |
| 8 | $92.35 | $1,754.44 | $1,140.39 |
| 9 | $92.35 | $1,662.09 | $1,080.36 |
| 10 | $92.35 | $1,569.74 | $1,020.33 |
| 11 | $92.35 | $1,477.39 | $960.30 |
| 12 | $92.35 | $1,385.04 | $900.28 |
| 13 | $92.35 | $1,292.69 | $840.25 |
| 14 | $92.35 | $1,200.34 | $780.22 |
| 15 | $92.35 | $1,107.99 | $720.19 |
| 16 | $92.35 | $1,015.64 | $660.17 |
| 17 | $92.35 | $923.29 | $600.14 |
| 18 | $92.35 | $830.94 | $540.11 |
| 19 | $92.35 | $738.59 | $480.08 |
| 20 | $92.35 | $646.24 | $420.06 |
| 21 | $92.35 | $553.89 | $360.03 |
| 22 | $92.35 | $461.54 | $300.00 |

1.0.0-6.0.0

LEASE NO: # 
LEASE DATE: 10/15/2021
1

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

| | | | |
|---|---|---|---|
| 23 | $92.35 | $369.19 | $239.97 |
| 24 | $92.35 | $276.84 | $179.95 |
| 25 | $92.35 | $184.49 | $119.92 |
| 26 | $92.35 | $92.14 | $59.89 |
| 27 | $92.14 | $0.00 | $0.00 |

The amounts and payments reflected in this table do not include applicable sales tax amounts and may change based on events that occur after this document was created.  Please visit www.acima.com for the most accurate Early Purchase Option Amount.



1.0.0-6.0.0



LEASE NO. #
LEASE DATE: 10/15/2021

2

# PLAINTIFF'S EXHIBIT A
## Plaintiff's Rental-Purchase Agreement with Acima

### Optional Liability Damage Waiver (LDW)

**Lease Purchase Agreement No.** ▮▮▮▮

**WHAT IS LDW?** In your lease purchase agreement, you agreed to pay Acima the cost to repair or replace the property if it is damaged or if someone steals it. You can pass most of this duty back to Acima by paying a small fee with each lease purchase payment. If you buy LDW, you will not have to pay Acima anything if the property is damaged by natural disaster, fire or smoke, or if someone steals it.

LDW is not insurance. If you buy LDW, Acima gives up its right to make you pay for a covered loss or damage.

**RULES:** LDW will apply only if all lease purchases and LDW fees are paid through the

date of loss. Also, you must have followed all other terms of your lease purchase agreement. LDW will not cover loss or damage done on purpose or caused by carelessness. If someone steals the property, you must file a police report and give a copy to Acima.

**STOPPING LDW:** If you want to stop buying LDW, just tell Acima. The LDW fee will not be charged with your next lease purchase payment. Acima can stop offering LDW by giving you a one-week notice.

**NOTICE:** Before you buy LDW, you should check if you have insurance that would pay to repair or replace the property, as well as the amount of any deductible.

I want to buy Optional LDW for $9.23 every-other-week. I understand that LDW is not part of any free rent offer.

Lessee: _____     Date: 10/15/2021

I do not want to buy the Optional LDW. I accept the risk that I will have to pay the cost to repair or replace the property if it is damaged or if someone steals it.

*Daniel Garcia*

Lessee: _____     Date: 10/15/2021

# PLAINTIFF'S EXHIBIT B
## Plaintiff's Experian Consumer Disclosure, June 14, 2022 - Excerpt

DANIEL GARCIA  |  Report number ███████  |  June 14, 2022  |  Print  |  Close window

## Print your report

Below is all the information currently in your credit report. The payment history guide and common questions will help explain your credit information. Print this page or write down your report number for future access.

### Address

Experian
P.O. Box 9701 Allen, TX 75013

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| ACIMA DIGITAL FKA SIMPLE | ██████ | $2,620 as of 02/28/2022 | 10/2021 | Account charged off. $795 written off. $1,051 past due as of Feb 2022. |

9815 S MONROE ST FL 4
SANDY, UT 84070
801 297 1920
**Address identification number**
0358647097

| Type | Credit limit or original amount | Date of status |
|---|---|---|
| Lease | $2,400 | 02/2022 |
| **Terms** | **High balance** | **First reported** |
| 12 Months | $0 | 10/2021 |
| **On record until** | **Monthly payment** | **Responsibility** |
| Jul 2028 | $0 | Individual |
| | **Recent payment amount** | |
| | $0 | |

### Account history

| 2022 | | 2021 | | |
|---|---|---|---|---|
| Feb | Jan | Dec | Nov | Oct |
| CO | C | CO | CO | CO |